# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SIANA GORDON, Administratrix of the ESTATE OF JAHAAD ATKINSON | x   Civil Action No.: 2:23-cv-02884 |
| and | |
| WYDEIA KIMBLE, Administratrix of the ESTATE OF AH'YIR WOMACK | |
| Plaintiffs, | |
| v. | |
| NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK), | |
| Defendant. | x |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NATIONAL RAILROAD PASSENGER CORPORATION'S ("AMTRAK") <u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>

On the Brief:
Yuri J. Brunetti, Esq.
Christopher S. Sheldon, Esq.

**PRELIMINARY STATEMENT**

Decedents Jahaad Atkinson and Ah'Yir Womack were trespassing on railroad tracks owned by defendant National Railroad Passenger Corporation ("Amtrak") on April 29, 2023 in Chester, Pennsylvania when they were struck and killed by Amtrak Train 161, which was traveling from New York City to Washington, D.C. Plaintiff Siana Gordon, Administratrix of the Estate of Jahaad Atkinson, and plaintiff Wydeia Kimble, Administratrix of the Estate of Ah'Yir Womack, filed the instant Complaint claiming Amtrak is responsible for the incident because it failed to repair and maintain fencing adjacent to the train tracks near the location of the incident. Plaintiffs claim that the damaged fencing at issue provided access to the tracks for the decedents.

Amtrak hereby moves this Court pursuant to Federal Rule of Civil Procedure 12(c) for an Order entering judgment on the pleadings on all counts of plaintiffs' Complaint for the following reasons: (1) under Pennsylvania law, Amtrak had no duty to erect or maintain fencing along its railroad tracks; and (2) even assuming Amtrak had a duty to erect or maintain fencing, which it denies, lack of fencing was not the proximate cause of the incident at issue.

4864-1058-0365v.1

**BACKGROUND AND PROCEDURAL HISTORY**

On July 27, 2023, plaintiff Siana Gordon, Administratrix of the Estate of Jahaad Atkinson, and plaintiff Wydeia Kimble, Administratrix of the Estate of Ah'Yir Womack ("plaintiffs"), commenced this action by filing a Complaint against Amtrak. (*See* Complaint, attached hereto at Exhibit A). Plaintiffs' Complaint alleges that on April 29, 2023, decedents gained access to Amtrak's railroad tracks through a hole in the fencing along the tracks near Central and Tilghman Streets in Chester, Pennsylvania. (*See* Exh. A, ¶¶ 10-12). Plaintiffs' Complaint alleges Amtrak was negligent in failing to repair the hole in the fencing adjacent to the tracks. (*See id.*, ¶ 29).

The Complaint further alleges it was common practice for children to walk through the hole in the fence in order to walk to a nearby playground at Memorial Park, so Amtrak knew, or should have known, its tracks were a "shortcut" to the playground used by child trespassers. (*See id.*, ¶¶ 11, 31). Plaintiffs allege Amtrak's negligence was the proximate cause of the damages claimed in the Complaint, and that Amtrak "knew or should have known that a complete, well-maintained fence was necessary to prevent children from trespassing on its train tracks." (*See id.*, ¶¶ 19, 30). Plaintiffs further allege that "it was entirely foreseeable, at the time of the incident in question, that a child or children would walk through the hole in Amtrak's fence, onto the train tracks, owned and operated solely by Amtrak, because of the history of similar incidents . . . ." (*See id.*, ¶ 22).

On September 15, 2023, Amtrak filed an Answer to plaintiffs' Complaint with Affirmative Defenses. Amtrak's Ninth Affirmative Defense asserts that decedents were trespassing at the time of the incident. (*See* Amtrak's Answer and Affirmative Defenses, attached hereto at Exhibit B). Amtrak's Tenth Affirmative Defense asserts that Amtrak owed no duty to decedents except to

refrain from causing injury through willful or wanton misconduct. (*Id.*) Amtrak's Eleventh and Twelfth Affirmative Defenses assert that Amtrak had no duty to erect or maintain fencing along its tracks, and the alleged lack of fencing or maintenance of fencing was not the proximate cause of the incident at issue. (*Id.*)

## ARGUMENT

### AMTRAK IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ALL COUNTS OF PLAINTIFFS' COMPLAINT BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

**A.     Applicable Standard for Rule 12(c) Motions**

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings will be granted when the movant "clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Minnesota Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (internal quotations and citations omitted). There is "no material difference in the applicable legal standards" for a motion for judgment on the pleadings under Rule 12(c) and a motion to dismiss under Rule 12(b)(6). *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "Courts have noted the similarity of the wording of the standard for a motion for judgment on the pleadings to the wording of the standard for a motion to dismiss under Rule 12(b)." *Sprague v. American Bar Ass'n.*, No. CIV. A. 01-382, 2001 WL 1450606 (E.D. Pa. Nov., 14, 2001). The courts "therefore review motions for judgment on the pleadings in the same manner as motions to dismiss." *Id.*

Under the familiar standards for Rule 12(b)(6) motions to dismiss for failure to state a claim, this Court must accept as true all facts alleged in the Complaint and all reasonable inferences

4864-1058-0365v.1

that can be drawn from them. *Sanguigni v. Pittsburgh Bd. of Pub. Educ.*, 968 F.2d 393, 395 (3d Cir. 1992). On the other hand, legal conclusions, unwarranted inferences and contentions of counsel are not accorded a presumption of truthfulness. *Wexco Inc. v. IMC, Inc.*, 820 F.Supp. 194, 197 (M.D. Pa. 1993) ("[C]onclusory allegations of law, unsupported conclusions and unwarranted inferences need not be accepted as true."); *see also Casper v. Paine Webber Group, Inc.*, 787 F.Supp. 1480, 1490 (D.N.J. 1992) ("[L]egal conclusions made in the guise of factual allegations are not given the presumption of truthfulness."). A motion to dismiss may be granted if, "accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec. Lit.*, 114 F.3d 1410, 1420 (3d Cir. 1997).

> **B.    Because Decedents were Trespassing at the Time of the Incident at Issue, Amtrak's Duty was to Refrain from Causing Injury through Willful or Wanton Misconduct**

Pennsylvania law defines a trespasser as "a person who enters or remains upon land in possession of another without a privilege to do so created by the possessor's consent or otherwise." *Rosino v. Kovacs*, 718 A.2d 755, 756-57 (Pa. 1998) (quoting Restatement (Second) of Torts § 329 (1965)).

Pennsylvania has enacted a Railroad Civil Immunity statute that further defines "trespasser" and sets forth the duty a railroad owes to trespassers:

> **Railroad Civil Immunity**
>
> (a) General rule.--A railroad carrier owes no duty of care to keep its railroad property safe for entry or use by any trespasser who enters upon any railroad property or railroad right-of-way or to give any warning to such trespasser entering or going on that railroad property of a dangerous condition, use or activity thereon. Except as set forth in subsection (b), a railroad carrier shall not:

> (1) Be presumed to extend any assurance to a trespasser entering or going on railroad property without the railroad carrier's consent that the railroad property is safe for any purpose.
>
> (2) Incur any duty of care toward a trespasser entering or going on railroad property without the railroad carrier's consent.
>
> (3) Become liable for any injury to a trespasser entering or going on railroad property without the railroad carrier's consent caused by an act or omission of such trespasser.
>
> (b) Limitation.--Nothing in this section limits in any way any liability which otherwise exists for willful or wanton failure to guard or warn against a dangerous condition, use or activity.
>
> (c) Definitions.--As used in this section, the following words and phrases shall have the meanings given to them in this subsection:
>
> **"Trespasser." A person who enters onto railroad property without any right, lawful authority or the express consent of the railroad.**

42 Pa. C.S.A. § 8339.1 (emphasis added). It is undisputed that decedents had no right, authority, or consent to be on Amtrak's tracks and therefore were trespassers at the time of the incident. Indeed, plaintiffs' Complaint refers to decedents as trespassers. (*See* Exh. A, ¶¶ 16-17 ("Amtrak knew or had reason to know that children and adults were likely to trespass on the train tracks . . . [t]hus, trespassers were anticipated"); *id.*, ¶ 19 ("fence was necessary to prevent children from trespassing on its train tracks"); *id.*, ¶ 31 ("Amtrak knew, or should have known, its train tracks and nearby playground, in which crossing the train tracks would have been considered a 'shortcut' to the playground, would attract child trespassers")).

Possessors of property may assume, at all times, that their property is free from trespassers, and they have no duty to anticipate the presence of future trespassers or to exercise "active vigilance" against injuries to possible future trespassers. *Heller v. Consolidated Rail Co.*, 576

F.Supp. 6, 10 (E.D. Pa. 1982); *Davies v. Delaware, Lackawanna & Western R.R. Co*., 87 A.2d 183, 188 (Pa. 1952); *Tedesco v. Reading Co*., 24 A.2d 105, 107 (Pa. Super. Ct. 1942). This is true regardless of whether the possessor's property is located in the vicinity of few or many inhabitants. *Rivera v. P.P. & L*., 1987 WL 45432, **3 (Lehigh Co. 1987) (*citing Braque v. Northern Central Railroad Company*, 43 A. 987, 991 (Pa. 1899)).

Possessors of property have no duty to trespassers except to refrain from causing injury through "willful" or "wanton" conduct. *Dudley v. USZ Co*., 606 A.2d 916, 921 (Pa. Super. Ct. 1992); *Stubbs v. Frazier*, 454 A.2d 119 (Pa. Super. Ct. 1982); *Evans v. Philadelphia Transportation Co.,* 212 A.2d 440, 442 (Pa. 1965); *Noonan v. Pennsylvania Railroad Company*, 194 A. 212, 215 (Pa. 1937). "Willful" conduct means that the actor "desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue." *Evans*, 212 A.2d at 443. "Wanton" conduct means that "the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *Stubbs*, 454 A.2d at 120, *citing Evans*, 212 A.2d at 443. Wanton misconduct is "ordinarily accompanied by a conscious indifference to the consequences and only exists where the danger to plaintiff is realized and is so recklessly disregarded that there is at least a willingness to inflict injury, if not the actual intent to do same." *Dudley*, 606 A.2d at 922, *citing Evans*, 212 A.2d at 443. [1]

---

[1] Pennsylvania law recognizes an important distinction between negligence and willful or wanton misconduct. As the Pennsylvania Supreme Court has explained:

> "…wanton misconduct is something different from negligence, however gross—different not merely in degree but in kind, and evincing a different state of mind on the part of the tortfeasor. Negligence consists of inattention or inadvertence, whereas

Here, decedents were clearly trespassers on Amtrak's track, and plaintiffs have admitted this fact in the Complaint. Thus, plaintiffs have the burden of proving that Amtrak acted in a willful or wanton manner, and that such conduct was the proximate cause of plaintiffs' damages. *Ott v. Unclaimed Freight Co.*, 577 A.2d 894, 897 (Pa. Super. Ct. 1990).

### C. Amtrak had No Duty Under Pennsylvania Law to Erect or Maintain Fencing Along its Tracks

Plaintiffs claim that Amtrak owns railroad lines in the eastern United States "that are enclosed by fencing," and that Amtrak is responsible for "building, repairing, and maintaining said fencing." (*See* Exh. A, ¶¶ 8-9). Plaintiffs allege that Amtrak was negligent "in failing to repair a gaping hole in the fence adjacent to the train tracks" at or near the incident location. (*See id.*, ¶ 29). Plaintiffs' only theory of liability in the Complaint is that Amtrak breached a duty to decedents by failing to maintain fencing, which had a large opening and provided decedents' access to the tracks. (*See* Exh. A, generally).

Under Pennsylvania law, courts have consistently held for over a century that railroads do not have a legal duty to fence off their rights-of-way or to police and patrol same in order to prevent trespassers from entering upon or crossing the tracks. *Laurie v. National Railroad Passenger Corporation*, 105 Fed.Appx. 387, 391 (3d Cir. 2004); *Scarborough by Scarborough v. Lewis*, 518 A.2d 563, 573 (Pa. Super. Ct. 1986), *rev'd on other grounds*, 565 A.2d 122 (Pa. 1989); *Tiers v. Pennsylvania R.R. Co.*, 141 A. 487, 490 (Pa. 1927); *Heller*, 576 F.Supp. at 10.

---

wantonness exists where the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury . . . ."

*Kasanovich v. George,* 34 A.2d 523, 525 (Pa. 1943). *See also Krivijanski v. Union Railroad Co.,* 515 A.2d 933 (Pa. Super. Ct. 1986).

4864-1058-0365v.1

In *Leithold v. Philadelphia & Reading Railway Co.*, 47 Pa. Super. 137, 144 (1911), the Pennsylvania Superior Court stated that there was no obligation on the part of a railroad to "erect impassable barriers along every foot of its right of way." Rather, the court held:

> The use of a railroad track, cutting, or embankment, except at lawful crossings is exclusively for the company and its employees. Except at crossings where the public have a right of way a man who steps his foot upon a railroad track does so at his peril. The company has not only a right of way, but such right is exclusive at all times and for all purposes . . . . They are not subject to an obligation to take precautions against any class of persons who may walk on and along their tracks. The only duty which it owes to a trespasser is not to injure him wantonly or intentionally . . . . The defendant company used its property in this locality solely for the passage of trains, and it had the right not only to demand, but reason to expect a clear track. The company did not owe to the public, adults or children, the duty of excluding them from access to its right of way . . . ."

*Id.* at 145-46.

Here, plaintiffs allege decedents entered onto Amtrak's tracks due to damaged fencing with a large hole adjacent to the tracks. However, Amtrak had no duty or obligation to fence or maintain fencing, and there is no Pennsylvania authority imposing a duty on railroads to maintain the fencing they choose to erect. Therefore, the lack of maintained fencing along Amtrak's right-of-way in Chester is not a basis of recovery for decedents' incident, and Amtrak is entitled to judgment as matter of law on all counts of plaintiff's Complaint. *See Laurie*, 105 Fed.Appx. at 391 (affirming summary judgment in favor of Amtrak where plaintiff asserted claims for a minor struck and killed by an Amtrak train, holding that Amtrak had no duty to maintain deteriorated fencing through which its tracks were accessed by decedent); *Scarborough*, 518 A.2d at 573 (reversing the trial court's denial of defendant railroad's motion for judgment n.o.v. where the minor plaintiff gained access to nearby train tracks through a hole in the city-owned fencing along the tracks and

stating that "it is well settled that a railroad has no duty to fence its right-of-way to prevent trespassing by children"); *Dugan v. Pennsylvania R.R. Co.*, 127 A.2d 343, 348 (Pa. 1956) (reversing a judgment against a railroad where "[p]laintiffs' counsel has not cited any case that goes as far as . . . requiring a [railroad] who is legitimately using [its] land for a socially desirable purpose, to take burdensome precautions [of erecting fencing] so as to eliminate the risk of injury to [trespassers]"); *Noonan v. Pennsylvania R.R. Co.*, 194 A. 212, 215 (Pa. Super. Ct. 1937) (affirming judgment in favor of defendant railroad because "the mere fact that the company did not so fence its right-of-way . . . did not involve a breach of duty which would render it liable in an action for damages"); *Murdock v. Pennsylvania R.R. Co.*, 27 A.2d 405, 406 (Pa. Super. Ct. 1942) (overturning plaintiff's verdict and holding that railroads have no duty to fence or guard against hazards to entrants along the entirety of their right-of-way); *Tedesco v. Reading Co.*, 24 A.2d 105, 108 (Pa. Super. Ct. 1942) (reversing judgment for plaintiff because under Pennsylvania law there is "no duty upon [a railroad] to fence and guard its tracks"); *Leithold,* 47 Pa. Super. at 142, 146 (Pa. Super. Ct. 1910) (overturning plaintiff's verdict because railroad companies have no duty to erect barriers along their rights-of-way where a trespasser may enter, **nor maintain fencing where it has become broken down**).

In light of the above case law confirming that Amtrak had no duty to erect fencing or to maintain any fencing along its tracks, plaintiffs cannot proceed with their claims against Amtrak, and judgment as a matter of law should be entered on behalf of Amtrak.

### D. Even Assuming Amtrak had a Duty to Erect or Maintain Fencing, which it Denies, Lack of Fencing was not the Proximate Cause of the Incident at Issue

As a matter of law, the lack of sufficient fencing is not the proximate cause of injuries which are sustained by people who are struck by trains while on the tracks. *Malischewski v.*

4864-1058-0365v.1

*Pennsylvania R.R. Co.*, 52 A.2d 215, 216 (Pa. 1947). In *Malischewski*, a minor child gained access to a railroad right-of-way through a defective gateway in a fence, where he proceeded to climb atop a loaded coal car, touch a live electrical wire, and injure his arm. *Id*. The court held that the defective gateway was not the proximate cause of the accident and affirmed the trial court's judgment of nonsuit for the defendant railroad. *Id.*; *see also Gardner by Gardner v. Consolidated Rail Corp.*, 573 A.2d 1016, 1019 (Pa. 1990) (in affirming the trial court's granting of the defendant's summary judgment motion, the court held, "[T]he defective fence did not proximately cause the injury in this or similar cases. The children were not injured by the fence; they merely passed through it."); *Scarborough by Scarborough v. Lewis, 565 A.2d 122, 126 (Pa. 1989)* (holding a that hole in a fence adjacent to railroad tracks was not the proximate cause of the plaintiff's injuries and reversing the trial court's denial of the defendant's motion for judgment n.o.v.).

Thus, based on the foregoing case law, lack of fencing cannot be the proximate cause of the injuries and damages claimed by plaintiffs in the Complaint. Therefore, Amtrak is entitled to judgment as a matter of law, and judgment on the pleadings should be entered on behalf of Amtrak.

## CONCLUSION

For the foregoing reasons, Amtrak respectfully requests that the Court enter judgment on the pleadings in its favor and against plaintiff on all counts of the Complaint.

Respectfully submitted,

By: /s/ *Yuri J. Brunetti*
Yuri J. Brunetti, Esq.
LANDMAN CORSI BALLAINE & FORD P.C.
1617 JFK Boulevard, Suite 955
Philadelphia, Pa 19103
(215) 561-8540
Attorneys for Defendant National Railroad
Passenger Corporation ("Amtrak")

DATED: December 1, 2023

4864-1058-0365v.1