IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SIANA GORDON, Administrator of the Estate of JAHAAD ATKINSON,<br><br>and<br><br>WYDEIA KIMBLE, Administrator of the Estate of AH'YIR WOMACK,<br>      *Plaintiffs,*<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION,<br>      *Defendant.* | Civil No. 23-2884 |

<u>MEMORANDUM</u>

COSTELLO, J.                                                                                                   July 17, 2025

On April 29, 2023, Jahaad Atkinson and Ah'Yir Womack were struck and killed by an Amtrak train while they were walking on railroad tracks owned by the National Railroad Passenger Corporation ("Amtrak"). The administrators of their estates, Siana Gordon and Wydeia Kimble, sued Amtrak, alleging it negligently caused Jahaad's and Ah'Yir's deaths. Amtrak has moved for summary judgment, arguing that the decedents were trespassers, and that Amtrak breached no duty to them. In addition, Amtrak argues that Plaintiffs cannot recover under the attractive nuisance doctrine. As detailed below, the Court agrees with Amtrak and will grant the motion.

**I.      FACTUAL BACKGROUND**

On April 29, 2023, shortly before 4:30 p.m., Ah'Yir Womack and Jahaad Atkinson were struck by Amtrak Train 161 as they were walking on train tracks in Chester, Pennsylvania. ECF

No. 47-2 ¶¶ 2, 12. The decedents were on an Amtrak bridge over a public street when they were struck. *Id*. at ¶ 24. Pedestrians can cross from one side of the tracks to the other by using the public street that runs directly under the bridge where the accident occurred. *Id*. at ¶ 54.

However, the decedents were not crossing the tracks when they were struck. Instead, they and several other boys, including S.A. and D.H., were using the tracks as a "short cut" to the park.[1] *Id*. at ¶ 5. They walked up a hill to get to the tracks and then walked straight along the tracks. *Id*. at ¶ 7. The park was four or five blocks away from where the boys entered the tracks, and the group walked along the tracks for four to ten minutes. *Id*. at ¶¶ 20-21. As they walked, a woman on the street below yelled at them to get off the tracks, but the group ignored the warning. *Id*. at ¶¶ 56-58.

There were four sets of tracks, and Train 161 was travelling on Track 3, which was an internal set of tracks. *Id*. at ¶¶ 22-23, 37. For about fifteen seconds before the accident, D.H. could hear an approaching train's horn. *Id*. at ¶ 28. S.A., who was walking directly on the tracks, moved to the side when he saw the train approaching. *Id*. at ¶ 16. The decedents, however, did not move from the train tracks as the train approached. The last time S.A. saw the decedents, they were still walking directly on the train tracks. *Id*. at ¶ 12.

A video camera on the train captured the accident. *Id*. at ¶ 26. The train engineer had activated the train's horn approximately sixteen seconds before impact. *Id*. at ¶ 27. The engineer began sounding the horn as the train crossed a series of bridges and before the decedents were visible from the train. *Id*. at ¶¶ 27, 30-31. Sounding the horn activated a bell and caused several lights on the front of the train to flash. *Id*. at ¶ 32. It is not known why the decedents did not get

---

[1] The full identify of the boys is known to the parties and to the Court.

off the tracks as the train, with its horn blowing and lights flashing, approached. There is no dispute that the train engineer complied with all rules and regulations governing the use of the horn. *Id*. at ¶¶ 38-40. In addition, there is no dispute that Train 161 was traveling below the 110 miles per hour speed limit at the time of the accident and complied with all speed limits leading up to the accident. *Id*. at ¶¶ 41-43.

## II.     PROCEDURAL HISTORY

Plaintiffs filed this lawsuit on July 27, 2023, accusing Amtrak of negligence and wrongful death related to its failure to erect or maintain fencing along its tracks. Amtrak moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that Plaintiffs failed to state a claim for negligence because Amtrak owed no duty to erect or maintain fencing along its right-of-way under either common law or Pennsylvania's Railroad Civil Immunity statute. ECF No. 19 at 3-4. Amtrak further suggested that even if it had a duty to erect or maintain fencing, a lack of sufficient fencing was not and could not be the proximate cause of the decedents' injuries. ECF No. 19 at 4-5. Finally, Amtrak asserted that the decedents were trespassers and, as such, Amtrak owed them no more than a duty to refrain from acting in a willful or wanton manner. ECF No. 19-1 at 5-8.

In response, Plaintiffs suggested Amtrak may have owed a duty to the decedents under the attractive nuisance doctrine. ECF No. 20-3 at 10-11. Plaintiffs further disputed that the decedents were trespassers and suggested they were using a permissive crossing such that they were licensees and therefore owed a greater duty of care. *Id*. at 12-13. Additionally, Plaintiffs emphasized that granting Amtrak's motion for judgment on the pleadings would be premature, noting that there could be "other legal theories" stemming from Plaintiffs' claims of negligence. *Id*. at 13, 15-17.

Amtrak countered that Plaintiffs "admitted" that the decedents were trespassers, because the complaint generally referred to children trespassing on the tracks. ECF No. 23 at 2. In addition, Amtrak argued there was no permissive crossing near the accident site, and the video from the train showed the decedents walking along the tracks, not crossing them. *Id*. at 2-4. Finally, Amtrak noted that any claim under the attractive nuisance doctrine would fail under the facts of this case. *Id*. at 6-7.

Following oral argument, the Honorable Mitchell S. Goldberg granted Amtrak's motion, dismissed the complaint without prejudice, and gave Plaintiffs leave to amend. ECF No. 27. Judge Goldberg found that the complaint plausibly alleged the existence of a permissive crossing, including that "the crossing was restricted to a well-defined location (the hole in the fence) and was used frequently, continuously, and notoriously (because the hole was "gaping") by children accessing the park." *Id*. at ¶ 11. Additionally, Judge Goldberg found that the complaint did not expressly label the decedents as trespassers, and the video was extrinsic evidence and therefore irrelevant to assessing the sufficiency of the complaint. *Id*. at ¶ 12. Accordingly, it was plausible that the decedents were in a permissive crossing, making them licensees who fell outside the scope of the Railroad Civil Immunity Statute, which applies only to trespassers. *Id*. at ¶ 13.

Judge Goldberg emphasized, however, that "the fact that decedents may not have been trespassers does not end the inquiry, as Plaintiffs must still identify a duty that was allegedly breached." *Id*. at ¶ 14. While train operators owe certain duties to licensees at permissive crossings, like warning of the train's approach, Plaintiffs did not allege that the train operator was negligent. *Id*. Rather, Plaintiffs alleged that Amtrak breached its duty by failing to repair the fence and allowing a hole through which children regularly crossed. *Id*. at ¶ 15. Judge Goldberg

4

recognized that "a railroad has no duty to fence its property." *Id*. "Moreover, a duty to erect fences is logically inconsistent with the notion of a permissive crossing: if a person has the railroad's 'permission to cross its property,' it cannot also be true that the railroad 'was negligent in not preventing her and other members of the public from crossing the tracks.'" *Id*. (citations omitted). Judge Goldberg also found Plaintiffs' invocation of the attractive nuisance doctrine unavailing as they "cited no authority that the general rule of attractive nuisance overrides the more specific rule that a railroad has no duty to fence its property." *Id*. at ¶ 17 (citations omitted).

In the alternative, Judge Goldberg noted that "if the decedents were trespassers, Plaintiffs would need to allege a 'willful or wanton failure to guard or warn against a dangerous condition, use or activity.'" *Id*. at ¶ 17 (quoting 42 PA. CONS. STAT. § 8339.1(b)). However, because Plaintiffs only alleged a failure to repair a hole in the fence, "and this was not even negligent," Plaintiffs' complaint failed to state a claim. *Id*. Nevertheless, the Court granted Plaintiffs leave to amend, noting "it is not clear that amendment would be futile, and, at this early stage of the proceedings, amendment would not be inequitable[.]" *Id*. at ¶ 19.

Plaintiffs then filed an amended complaint arguing Amtrak was negligent based on various conduct. ECF No. 30 at 9-11, 15-17. Amtrak's allegedly negligent conduct fell into six general categories: (1) negligent operation of the train, (2) failure to monitor pedestrian safety or respond to pedestrian presence, (3) failure to warn of or address known hazards, (4) failure to maintain safe premises, (5) failure to train or supervise employees, and (6) other general breaches of the duty of care.

With respect to negligent train operation, Plaintiffs allege that Amtrak's employees or agents operated the train at an excessive rate of speed and failed to observe the decedents on the

5

tracks in a timely manner. ECF No. 30 at 9-10, 15-16. According to the amended complaint, even once the decedents were visible, the crew failed to slow down, apply the brakes, or otherwise stop the train in time to avoid impact or give the decedents a chance to evade harm. *Id*. Plaintiffs further contend that the train crew failed to sound the horn to warn the decedents of the impending danger. *Id*.

Second, Plaintiffs suggest that Amtrak failed to monitor pedestrian safety or respond to pedestrian presence. Third, Plaintiffs assert that Amtrak had prior notice of pedestrian activity, either through complaints or internal knowledge, yet failed to take appropriate action to mitigate the risk. In particular, Plaintiffs claim that Amtrak did not tell its employees about pedestrian access in the area. *Id*. at 9-11, 15-17.

Fourth, Plaintiffs contend that Amtrak failed to maintain safe premises because it failed to install barriers or fencing to prevent pedestrian access to the tracks, failed to post warning signs, and failed to inspect or repair fencing. *Id*. at 10, 16. Plaintiffs allege that these omissions created a permissive crossing that was well-defined and frequently used by the public. *Id*.

Fifth, the amended complaint alleges that Amtrak failed to adequately train or supervise its employees. *Id*. Specifically, Amtrak allegedly did not provide adequate training related to pedestrian risks near stations, observing and responding to pedestrians on the tracks, or use of warning devices, such as horns. *Id*. Finally, Plaintiffs allege that Amtrak generally failed to exercise reasonable care to eliminate known dangers, protect the decedents, or avoid causing injury. *Id*. at 9, 15.

Subsequently, Amtrak moved for summary judgment. Amtrak again argues that it did not breach any duty to the decedents, and that the decedents were trespassers. ECF No. 47-1 at 4. Amtrak further contends that the decedents were not in a permissive crossing, and any attractive

nuisance claim fails under Pennsylvania law. *Id*. at 14-22. Amtrak reiterates that it had no duty to erect or maintain fencing along its right-of-way or to police its tracks to prevent trespassers. *Id*. at 23-24. Finally, Amtrak suggests Plaintiffs cannot support their claim for punitive damages. *Id*. at 25.

In response, Plaintiffs state that they are no longer pursuing—and therefore do not object to the dismissal of—claims related to the train engineer's operation of the train or Amtrak's failure to train, build fencing, or police the train tracks. ECF No. 51 at 6, n.1. Plaintiffs maintain, however, that the decedents were in a permissive crossing such that they were licensees, and even if they were trespassers, Amtrak is liable for its willful and wanton misconduct. Plaintiffs also suggest that Amtrak is liable under the attractive nuisance doctrine. *Id*. at 9-17.

After summary judgment was fully briefed, new counsel entered for Plaintiffs. Weeks before the scheduled trial, Plaintiffs moved to reopen discovery. ECF No. 55. In the alternative, Plaintiffs moved to voluntarily dismiss this case without prejudice under Rule 41(a)(2). ECF No. 56. The Court denied both motions.

During oral argument, the Court referenced prior counsel's statement related to dismissing certain claims and asked new counsel if they, too, were only proceeding on the permissive crossing and attractive nuisance theories. Counsel did not disavow prior counsel's statements. However, they suggested that the amended complaint did not plead the attractive nuisance doctrine. Plaintiffs then agreed that the decedents were not in a permissive crossing, and there was no willful or wanton conduct. Further, Plaintiffs were unable to identify any duty breached by Amtrak or any disputed material facts.

Nonetheless, the Court is required to set forth the legal reasons for its grant of summary judgment. *See Vadino v. A. Valey Engineers*, 903 F.2d 253, 259 (3d Cir. 1990) (exercising supervisory power and requiring "the district courts in this circuit to accompany grants of summary judgment hereafter with an explanation sufficient to permit the parties and this court to understand the legal premise for the court's order"); FED. R. CIV. P. 56(a). Accordingly, the Court will address the following issues: (1) whether the decedents were trespassers or licensees; (2) any duty of care Amtrak owed to the decedents and whether Amtrak breached any such duty by acting willfully or wantonly; (3) whether Plaintiffs may recover under the attractive nuisance doctrine; and (4) whether Plaintiffs' claims for punitive damages can withstand summary judgment.

### III.    LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law[.]" *Id*. The movant bears the initial responsibility of informing the Court of the basis for its motion and identifying the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Then, the nonmovant must "set forth specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

In ruling on a summary judgment motion, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009) (citation and quotation marks omitted). However,

a court is not required to credit "[u]nsupported assertions, conclusory allegations, or mere suspicions." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010). Finally, a court does not make credibility determination or weigh the evidence. *See Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016).

## IV.     DISCUSSION

### A.     Negligence

To prove negligence under Pennsylvania law, a plaintiff must establish: (1) a legally recognized duty or obligation; (2) a breach of that duty; and (3) a causal relationship between the defendant's breach of that duty and the plaintiff's damages.[2] *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 776 (3d Cir. 2018) (quoting *Green v. Pa. Hosp.*, 123 A.3d 310, 315-16 (Pa. 2015)). The issue of whether a defendant breached a duty is generally a question of fact, but the existence of such a duty is a question of law. *Maas v. UPMC Presbyterian Shadyside*, 234 A.3d 427, 436 (Pa. 2020).

#### 1.     Decedents' Status as Trespassers or Licensees

Amtrak's duty or obligation depends on whether the decedents were trespassers or licensees. Under the Pennsylvania Railroad Civil Immunity Statute, a trespasser is "[a] person who enters onto railroad property without any right, lawful authority or the express consent of the railroad." 42 Pa. Cons. Stat. § 8339.1(c). "Mere acquiescence to trespassing does not alter an entrant's status," and "a foreseeable trespasser is still a trespasser." *Manfred v. Nat'l R.R.*

---

[2] Plaintiffs' amended complaint includes claims under Pennsylvania's Wrongful Death and Survival Act. ECF No. 30 at 11-13, 17-19. Pennsylvania's Wrongful Death and Survival Act, "did not create a new theory of liability but merely allowed a tort claim of the decedent to be prosecuted." *Becker v. Carbon Cnty.*, 177 F. Supp. 3d 841, 847 (M.D. Pa. 2016) (quotation omitted). "As a result, a plaintiff must state all the elements of a valid tort in order to maintain a claim under those statutes." *Id.*

*Passenger Corp.*, 106 F. Supp. 3d 678, 682 (W.D. Pa. 2015) (quoting *Estate of Zimmerman v. Se. Pa. Transp. Auth.*, 168 F.3d 680, 686 (3d Cir. 1999)).

"A permissive crossing is an express or implied license to pass over the property of another." *Henry v. Pennsylvania R.R. Co.*, 84 A.2d 675, 677 (Pa. 1951) (citations omitted). Permissive crossings "must be restricted to a well-defined location and must be shown to be used frequently, continuously, and notoriously by the public.  Essential to the establishment of the permissive way is the well-defined location of the way in a limited area." *Id.* (citations omitted). A permissive crossing "places upon the railway company the duty of care comparable to that required at a regular crossing." *Gaul v. Consolidated Rail Corp.*, 556 A.2d 892, 256 (Pa. Super. Ct. 1989) (quoting *Hamley v. George*, 76 A.2d 181, 183 (Pa. 1950)).

The record evidence clearly establishes that the decedents were not in a permissive crossing when they were struck.  The parties do not dispute, and the video footage confirms, that the decedents were walking longitudinally along the tracks, not crossing them.  Moreover, the video shows no physical indication of a well-defined pathway across the tracks that was regularly used.  On the contrary, when they were struck, the decedents were walking longitudinally on tracks that ran across a bridge with high railings, which would permit no perpendicular crossing whatsoever.  Indeed, pedestrians can cross from one side of the tracks to the other only by using the public street that runs under the bridge.  The evidence clearly establishes that the decedents were traveling longitudinally, and there is no longitudinal permissive way under Pennsylvania law. *Antonas v. Lyford*, 144 F.2d 763, 764 (3d Cir. 1944); *Davies v. Delaware, L. & W. R. Co.*, 87 A.2d 183, 185 (Pa. 1952) ("[A] permissive way could not parallel the tracks on the right of way.") (citation omitted).  Accordingly, decedents were trespassers, and not licensees.

### 2. Willful and Wanton Conduct

Because decedents were trespassers, Amtrak can be held liable only for willful and wanton conduct. Accordingly, any claim based on Amtrak's allegedly negligent conduct fails as a matter of law.

Under Pennsylvania's Railroad Civil Immunity statute, "[a] railroad carrier owes no duty of care to keep its railroad property safe for entry or use by any trespasser who enters upon any railroad property or railroad right-of-way or to give any warning to such trespasser entering or going on that railroad property of a dangerous condition, use or activity thereon." 42 PA. CONS. STAT. § 8339.1(a). Except as set forth in subsection (b), a railroad carrier shall not:

(1) Be presumed to extend any assurance to a trespasser entering or going on railroad property without the railroad carrier's consent that the railroad property is safe for any purpose.

(2) Incur any duty of care toward a trespasser entering or going on railroad property without the railroad carrier's consent.

(3) Become liable for any injury to a trespasser entering or going on railroad property without the railroad carrier's consent caused by an act or omission of such trespasser.

*Id*. at § 8339.1(a)(1)-(3). However, "[n]othing in this section limits in any way any liability which otherwise exists for willful or wanton failure to guard or warn against a dangerous condition, use or activity." *Id*. at § 8339.1(b).

With respect to willful and wanton conduct, the Pennsylvania Supreme Court has explained the distinction as follows:

> [W]illful misconduct means that the actor desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue. This, of course, would necessarily entail actual prior knowledge of the trespasser's peril. Wanton misconduct, on the other hand, means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk

> known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow.

*Evans v. Phila. Transp. Co.*, 212 A.2d 440, 443 (Pa. 1965) (citation omitted).

As Plaintiffs conceded during argument, there is no evidence of wanton or willful misconduct in this case. The engineer began sounding the horn approximately sixteen seconds prior to the accident, before the decedents were visible. Train 161 was travelling below the speed limit before and at the time of the accident, and the decedents were not visible until seconds before impact. Finally, any argument that Amtrak acted wantonly or willfully in failing to erect, maintain, or repair fencing, or to police its tracks, is without merit, as Amtrak has no legally recognized duty to take such measures under Pennsylvania law. *Scarborough v. Lewis*, 565 A.2d 122, 126 (Pa. 1989) ("[I]t long has been held that a railroad has no duty to erect fences on its right-of-way to deter trespassers."); *Laurie v. Nat'l Passenger R.R. Corp.*, 105 F. App'x 387 (3d Cir. July 23, 2004) ("Nor does Pennsylvania law require a railroad to post guards or to police tracks to prevent trespassing.") (citing *Dugan v. Penn. R.R. Co.*, 127 A.2d 343, 349 (Pa. 1956)). Without a duty to erect, maintain, or repair fencing, or to police its tracks, Amtrak cannot, as a matter of law, willfully or wantonly fail to do so.

**B.    Attractive Nuisance**

Plaintiffs argue that Amtrak owed the decedents a heightened duty of care based on the attractive nuisance doctrine. Pennsylvania adopted Section 339 of the *Restatement (Second) of Torts*, which provides that a possessor of land is liable for physical harm to trespassing children caused by an artificial condition upon the land if:

> (a)    the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

    (b)    the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

    (c)    the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

    (d)    the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

    (e)    the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

*Restatement (Second) of Torts* § 339); *see also Bartleson v. Glen Alden Coal Co.*, 64 A.2d 846, 851 (Pa. 1949) (noting Pennsylvania adopted Section 339).

While the phrase "attractive nuisance" does not appear in the Amended Complaint, Plaintiffs clearly alleged each element of attractive nuisance under § 339.[3] Because Plaintiffs cannot satisfy element (c), however, the claim fails as a matter of law. *See Nixon v. Norfolk Southern Corp.*, No. 05-101, 2007 WL 4190705, at *7-8 (W.D. Pa. Nov. 21, 2007), *aff'd* 295

---

[3] In part, the amended complaint alleged that there was a well-defined passageway for children to access the park, and "Defendant's knew or had reason to know that individuals were likely to cross on the train tracks in this area." ECF No. 30 ¶¶ 12, 23. Further, the decedents "neither discovered the dangerous condition, nor realized and/or appreciated the serious risk of death or bodily injury involved in crossing Defendant's train tracks." *Id*. at ¶ 26. "[T]he utility of continuing Defendant's operations without even minimal barriers to keep pedestrians from entering the train tracks and the burden of erecting extra fencing to protect individuals is minimal as compared to the risk of death and serious bodily injury." *Id*. at ¶ 27. "Defendant knew or should have known the cost in maintaining the condition and fencing around the train tracks was slight compared with the burden of maintaining said fencing, and there was significant risk of death or serious bodily harm to Decedent and others similarly situated by failing to maintain said fencing." *Id*. at ¶ 63. Finally, "Defendant's [sic] failed to exercise reasonable care to eliminate the danger and risk of death and serious bodily injury or otherwise protect individuals from this danger." *Id*. at ¶ 28.

Fed.Appx. 523 (3d Cir. 2008) (citing *Holland v. Baltimore & Ohio R.R. Co.*, 431 A.2d 597, 602 (D.C. App. 1981)).

Element (c) requires that "children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or coming within the area made dangerous by it." *Restatement (Second) of Torts* § 339(c). However, "a moving train is not a subtle or hidden danger and its potential for causing serious bodily injury or death to anyone in its path is readily apparent, even to young children." *Nixon*, 2007 WL 4190705, at *5 (citation omitted). Further, "[i]f it were bound to keep constant guard against the possible presence of others, wherever it was customary for trespassers or licensees to enter upon its right of way, a proper operation of trains for the convenience of the public would be rendered most difficult, if not impracticable." *Dugan*, 127 A.2d at 349. Because Plaintiffs have not satisfied each of the five elements of the attractive nuisance doctrine, this claim fails as a matter of law.[4]

### C. Punitive Damages

Punitive damages are "an 'extreme remedy' available in only the most exceptional matters." *Phillips v. Cricket Lighters*, 883 A.2d 439, 445 (Pa. 2005) (citations omitted). "Punitive damages may be appropriately awarded only when the plaintiff has established that the defendant has acted in an outrageous fashion due to either 'the defendant's evil motive or his reckless indifference to the rights of others.'" *Id*. (citation omitted). "[P]unitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." *Hutchinson ex rel. Hutchinson v. Luddy*, 870

---

[4] As Judge Goldberg previously observed, Plaintiffs still have not cited authority to support the idea "that the general rule of attractive nuisance overrides the more specific rule that a railroad has no duty to fence its property." ECF No. 27 at ¶ 16 (citations omitted).

14

A.2d 766, 770 (Pa. 2005). The purpose of punitive damages is to punish the defendant and deter him and others from engaging in similar conduct. *Id*. As outlined above, there is no evidence of willful or wanton misconduct. Accordingly, punitive damages are precluded as a matter of law.

## V. CONCLUSION

There is no genuine dispute as to any material fact, and Amtrak is entitled to judgment as a matter of law. The decedents were trespassers. As such, Amtrak's only duty was to refrain from willful or wanton misconduct. There is no evidence of any such misconduct. Moreover, Plaintiffs cannot avail themselves of a stricter standard of care under the attractive nuisance doctrine. The Court therefore will grant Amtrak's summary judgment motion.

An appropriate order follows.

**BY THE COURT:**

_____
MARY KAY COSTELLO, J.